240 P.2d 865

McBRIDE v. INDUSTRIAL COMMISSION et al.

No. 5530.

Supreme Court of Arizona.

Feb. 18, 1952.

D. Kelly Turner, of Phoenix, for petitioner.

Robert W. Pickrell, of Phoenix, for respondent Industrial Commission. H. S. McCluskey and Robert E. Yount, of Phoenix, of counsel.

DE CONCINI, Justice.

Wanda E. McBride, widow of the deceased workman, Doxsee H. McBride, petitioned for a writ of certiorari to review the action of the respondent Industrial Commission of Arizona in denying her claim for widow's and minors' benefits under the Workmen's Compensation Law, A.C.A.1939, § 56–901 et seq.

Petitioner assigns four errors based on a number of propositions of law. The first two assigned errors are to the effect that the commission failed to act judicially and that it acted "arbitrarily and capriciously in obtaining a review of a challenged medical opinion, and in relying upon the review which declined to re-evaluate the challenged medical opinion". The other two assignments of error challenge the award on the ground that it is not supported by the evidence.

While the facts surrounding the accident and death of the deceased are not complicated, yet the history of this case in the annals of the commission has a number of ramifications. The commission held five hearings, examined numerous laboratory reports and medical opinions, and consistently held that the deceased's death had no relation to the accident he sustained.

The deceased, on November 26, 1948, was in the employ of Fannin's Gas & Equipment Company. While working as an installation helper on one of the delivery trucks, he was struck on the chest with a heavy "boomer chain". The blow did not cause him to lose consciousness, but did cause pain and loss of breath. He was immediately taken to a doctor, who examined him and ordered that X-rays be taken of the right chest and shoulder. McBride remained in the hospital overnight. The accident happened on a Friday and he returned to work early the next week.

He tried to continue with the same type of heavy work that he had done previously, but complained of pains in his chest and difficulty of breathing, so after several days he was assigned to lighter work.

On February 25, 1949, he consulted a physician who, after an examination, recommended that he consult a heart specialist. This he did, and on the latter's advice ceased working at that time. This was the first time that McBride learned that he suffered from any type of heart trouble.

On March 11, 1949, two days before Mc-Bride died, he filed a petition with the commission for readjustment or reopening of the award for accident benefits made by that body on January 20, 1949. (This award covered hospitalization and medical expenses only for the November 26th injury).

On March 15th Dr. Harold Wood, a pathologist, performed an autopsy on the body of the deceased, and his report, in part is as follows:

"Generalized arteriosclerosis, unusually advanced for the age of the subject (43 years), involving especially the aorta and the coronary arteries, with multiple foci of coronary artery stenosis; progressive, healed and healing posterior myocardial infarction. Acute circulatory failure, indicated by generalized congestion of the viscera.

\* \* \* \* \* \*

"*Note:* The autopsy findings indicate death to be the result of acute myocardial failure, secondary to coronary insufficiency and progressive posterior myocardial infarction. The disease responsible for the heart lesions is arteriosclerosis.

"I see no anatomical evidence of thoracic trauma and I see no evidence of relationship between thoracic trauma or pulmonary coccidioidal granuloma, and the death of the individual."

On April 14, 1949, the commission denied McBride's petition to reopen the claim.

Petitioner filed a motion for rehearing, which was held May 27, 1949. At this hearing, Drs. Martin C. Flohr and Charles S. Mills testified favorably to the contention of the petitioner, that the blow sustained by the deceased on November 26, 1948 had aggravated the pre-existing heart condition, thus hastening McBride's death from the latter condition. Both of these doctors were the ones who had examined McBride on February 25th. Dr. Wood testified against petitioner's contention as to the effect of the accident.

After this hearing, the entire record was submitted to a board of medical review composed of three doctors selected by the commission. They made a report, dated July 26, 1949, finding that the blow on the chest did not aggravate the then existing heart condition. They said in part: "The history has been reviewed and the essential points are as follows: On November 26, 1948, the patient received a blow on the right side of his chest, \* \* \*. It is worthy of note that the blow struck the right side of the chest and that the patient's complaints were those of pain (to) the right side of the chest. X-ray examination performed at that time was limited to the right side of his chest, obviously because that was the only region the patient complained of. \* \* \*" We will consider the above statements at this point. Petitioner makes much of the fact that the review board found that the blow struck the right side of the chest, although at later hearings it was

brought out by cross-examination of the members of the board that they considered it immaterial where the blow struck. (It is mentioned here only to show a conflict on this point.) The record of Dr. Kent, the first physician to see and examine the workman after the injury, deals only with the right side of the chest. His report submitted to the commission in December, 1948, said: "7. State in patient's own words where and how the accident or cause of disability occurred: 'While unloading tanks, chain boomer hit me on right side of chest as I was unfastening the chain.'" A report submitted by Dr. Martin Flohr to the commission in connection with the petition filed March 11th, stated in response to the same question: "A boomer broke loose and hit me on breast bone." A witness who was present at the time of the accident stated that McBride grabbed his left chest after being struck. There is other disputed evidence as to whether there was any treatment to the left chest when McBride was taken to the hospital. Dr. Kent, who was in charge of the patient, stated that he ordered no pad or compress placed on the left side. The hospital record also showed no such treatment. Contrasted to this is the statements of the petitioner and her sister-in-law that they saw such a thing on his left side.

As will be brought out later, this is not of too much importance, since the medical review board at a subsequent hearing stated it would not have affected their decision had the blow been received on the left side.

To continue with a portion of the review board's report:

"The relationship of direct trauma to the chest to succeeding heart disease is one that has been relatively recently well established, both by experimental and by clinical studies. It is the opinion of most men who are expert in this field, *that a blow which is sufficient to give heart disease to the extent of causing death, will do so in a relatively short period of time, and that if the patient has an otherwise normal heart and survives for a short period of time (usually days) after the blow, that the heart will then return to entirely normal function.* In this case, we have an interval of almost four months between the time of the blow and the death of the patient. It is the opinion of the undersigned that so long an interval makes it more improbable that there is any positive relationship between the trauma and the eventual death of the patient. Further, it is felt that the autopsy evidence of severe arteriosclerosis places this patient in the group of those who were prematurely aged, who had severe arterial disease, particularly affecting the arteries of the heart, and who simply pursued a downward course until the time of his death. It is felt that this patient probably would have died when he did if he had never been struck on the chest in November, 1948. The evidence of coronary insufficiency, obtained by this patient's attending

physicians during his life, is corroborative, but it is felt that this merely represented the state of this man's heart at the particular time without reference to his injury.

"It is therefore, the unanimous opinion of the undersigned that the injury described in this case could not have caused or contributed to the death of the claimant." (Emphasis supplied.)

Petitioner's contention was that the blow aggravated deceased's previous condition; not that it caused it. The report however it clear that it was the opinion of the review board that the blow did not aggravate his condition or cause his death. Subsequent testimony of the review board members corroborates the report that death would have probably resulted whether he received the blow or not, and further that it made no difference which side of the chest he received the blow.

On August 17, 1949 the commission denied petitioner's claim.

Another hearing was held on October 7, 1949, at which time the three doctors who composed the review board were cross-examined by counsel for the petitioner. In explanation of the above, Dr. Joe C. Ehrlich testified in response to the following questions:

"Q. Can you explain the insertion of the statement that if the patient has an otherwise normal heart the heart will then return to entirely normal functions? A. That is just as it is stated, I think perhaps what you would like to know is what would happen following a blow to a previously diseased heart?

"Q. That is right. A. Within a period of hours and occasionally days, if the blow is going to be a deciding factor the patient will die. If the patient doesn't then within a period of days the heart will return to normal function if the heart was previously normal; if it was previously diseased it will not return to normal.

"Q. It is your opinion then in a matter of days it will return to a condition prevailing prior to the blow? A. That is correct." (Emphasis supplied.)

The other two members of the review board (Drs. Hamer and McKeown) were of the same opinion. Their conclusion was, the blow did not contribute to the eventual cause of death because of the three and one-half months period between time of injury and death.

Drs. Flohr and Mills were of the opinion that it was more than coincidental that the pains in the chest started immediately with the injury and continued to death. The members of the review board were of the opinion that the pain might have resulted from traumatic pleurisy. On November 26, 1949 the commission again denied petitioner's claim.

Three other hearings were held in this matter, one to inquire into the medical evidence, another to examine a sister-in-

law of petitioner, and the last to examine Dr. Melvin Kent, who first treated McBride after the injury. Dr. Kent corroborated the review board in regard to traumatic pleurisy.

After this hearing, a hypothetical question stipulated to and agreed upon by respective counsel, and embodying the essential facts of this case, was submitted by the commission to a medical review board composed of the three doctors who had comprised the original review board and one additional doctor, Charles S. Mills, who treated deceased shortly before he died.

The result was that the three members of the original board adhered to their former opinion. "3. That all the material contained in this hypothetical question fails, from a medical and pathological standpoint, to convince us that the injury in question November 26, 1948 aggravated, in any way, the diseased condition of the heart existing on that date." Dr. Mills, the fourth member, said: " * * * it is still my belief that, from the chain of events which occurred following the accident to Mr. Doxsee H. McBride, as defined, his previous heart trouble was aggravated by the blow to the chest."

After the above review, the commission, on May 4, 1951, affirmed its previous decisions which denied death benefits, based on the original opinion of the first review board.

The above is a lengthy condensation of what transpired in this cause, prior to certiorari being granted.

We shall treat petitioner's assignments as follows:

Counsel for petitioner asserts four errors for review. The first two as summarized are: The commission acted arbitrarily. The second two, that: The evidence does not sustain the award.

■■ We find no merit to the first contention. It was not necessary for the commission to have submitted the record to a medical review board. It could have relied entirely on the report of its own doctor, the autopsy report and the doctors presented by the petitioner, as well as the testimony and record presented by Dr. Kent. We fail to see any arbitrary action on the part of the commission in making its award on the report of the medical review board, and again on the cross-examination of the members of the board, and again by submitting to the review board and Dr. Mills a hypothetical question based on the facts in this case. Further, there was no showing made that the members of the review board were incompetent, biased, or gave their last decision as a result of prejudgment. The commission was not obligated to accept the recommendation made by the three doctors selected by them. Ison v. Western Vegetable Distributors, 48 Ariz. 104, 59 P.2d 649.

Neither do we find any merit to petitioner's second contention.

The same type of problem as here presented was involved in Tashner v. Industrial Commission, 62 Ariz. 333, 157 P.2d 608, 609, wherein we said: "* * * This court has uniformly held that where the order or finding of the commission is based on reasonable evidence, it will be upheld. The only evidence in the record which supports the commission's order is the conclusion of the medical board, * * *. The sole question is, does this conclusion afford reasonable evidence to support the award: * * *." In the Tashner case, the award was set aside because the conclusion of the medical board was not supported by the medical evidence. The commission in the case at bar, however, unlike in the Tashner case, had before it two conflicting medical opinions as to the cause of McBride's death. Each of these opinions was supported by reputable medical testimony. The conclusion of the review board was "reasonable evidence to support the award".

While we may sympathize with petitioner's predicament yet we are not the triers of facts. Counsel for petitioner has made the best case possible with the record before us. However, it is not our function to substitute our opinion on the facts in the place of the commission. Davidson v. Industrial Commission, 72 Ariz. 314, 235 P.2d 1007; Hewett v. Industrial Commission, 72 Ariz. 203, 232 P.2d 850.

Award affirmed.

UDALL, C. J., and STANFORD, PHELPS and LA PRADE, JJ., concur.